**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**CHAZ PINKSTON**                                                                                                                                **PLAINTIFF**

**V.**                                                                                                                 **NO. 4:17-CV-39-DMB-DAS**

**MISSISSIPPI DEPARTMENT OF**
**CORRECTIONS, et al.**                                                                                                    **DEFENDANTS**

**ORDER**

This civil rights case is before the Court on (1) the Report and Recommendation of United States Magistrate Judge David A. Sanders, Doc. #222, which recommends that Chaz Pinkston's claims against Hendrick Kuiper, the sole remaining defendant, be dismissed with prejudice; (2) Pinkston's objections to the Report and Recommendation, Doc. #230; and (3) Pinkston's motion for contempt, Doc. #221.

**I**
**Procedural History**

On February 20, 2019, United States Magistrate Judge David A. Sanders noticed a May 23, 2019, evidentiary hearing on Chaz Pinkston's only claim remaining in this action—a forcible medication claim against Hendrick Kuiper. Doc. #188; Doc. #129 at 21. On May 13, 2019, the Clerk of the Court issued a writ of habeas corpus ad testificandum directing the warden of the Wilkinson County Correctional Facility—where Pinkston is incarcerated—to produce Pinkston at 10:00 a.m. for the hearing. Doc. #203. Ultimately, Kuiper and his counsel appeared for the evidentiary hearing. Pinkston, who is proceeding pro se, did not.

At the outset of the hearing, Judge Sanders stated that he had been informed by prison officials that Pinkston refused to leave his cell to attend the hearing. Judge Sanders then accepted into evidence the testimony of Kuiper, a "CD of copies of depositions, deposition exhibits and

medical records," and a copy "of Medical Housing Census from [Mississippi State Penitentiary] for 9/13/2016 to 9/16/2016." Doc. #217. Judge Sanders also allowed the telephonic testimony of Jeannette Grayson, a transportation sergeant at Wilkinson County Correctional Center, who testified that Pinkston refused to leave his cell for the hearing.

On June 4, 2019, this Court received from Pinkston three documents, all dated May 23, 2019: (1) a motion for leave to file a motion for contempt, Doc. #220; (2) a motion for contempt, Doc. #221; and (3) a declaration in support of the motion for contempt, Doc. #221-1. Pinkston's declaration, which was executed under penalty of perjury, offers a very different account of the May 23 events than those offered by Grayson—in it, Pinkston states, "I did not refuse my opportunity to go to my Evidentary [sic] Hearing." *Id.* at ¶ 3. Specifically, Pinkston alleges in the declaration that he was awakened by guards at 4:32 a.m. and started to prepare for the hearing. *Id*. at ¶ 4. After the guards complained about the amount of time he was taking, Pinkston said, "go sit on the stools at the table and I would be ready in a jiffy." *Id*. According to Pinkston, he finished his preparations at 4:55, but the guards were gone. *Id*. At approximately 6:30 a.m., Pinkston was informed that the guards had told the captain that he refused to go without a haircut. *Id*. Sometime later, Pinkston spoke with an officer who allegedly said, "'they' don't want to see you win or hear about you winning to break your spirit." *Id*. at ¶ 9.

On June 6, 2019,[1] Judge Sanders issued a report and recommendation ("R&R") which recommends that judgment be entered in Kuiper's favor based on the evidence presented at the hearing or, in the alternative, that Pinkston's claim be dismissed for failure to prosecute based on his refusal to attend the hearing. Doc. #222 at 5–6. The next day, Judge Sanders denied Pinkston's motion for leave and motion for contempt on the grounds that "[i]f Plaintiff is dissatisfied with the

---

[1] The document is dated May 6, 2019, but was docketed on June 6, 2019.

court's conclusion, he may object to the Report and Recommendation in due course." Doc. #223.

Subsequently, Pinkston filed: (1) a motion for leave to file a motion for reconsideration, Doc. #227; (2) a motion for reconsideration of the order denying contempt, Doc. #228; (3) a motion for leave to file an objection to the R&R, Doc. #229; (4) an objection to the R&R, Doc. #230; and (5) a supplement to the objection, Doc. #231. Kuiper responded to the objection on July 1, 2019. Doc. #232. Pinkston then moved to reply to Kuiper's response. Doc. #233. On October 8, 2019, Judge Sanders granted Pinkston leave to file a motion for reconsideration, denied the motion for reconsideration, granted leave to file an objection to the R&R, and denied leave to reply to Kuiper's response. Docs. #235, #236.

On or about October 22, 2019, Pinkston filed a "Motion for Leave to Appeal Court Orders to 5th Circuit Federal Court of Appeals." Doc. #240. Judge Sanders construed this motion as a motion for reconsideration, which he denied on November 5, 2019. Doc. #241.

On May 21, 2020, this Court, noting "[t]he prevailing view … that a magistrate lacks the power to adjudicate contempt proceedings," set aside the denial of Pinkston's contempt motion, and provided that "[a]n evidentiary hearing on the motion for contempt, the report and recommendation, and the objections to the report and recommendation will be set by separate notice." Doc. #246 at 1 (record citations omitted). Consistent with this order, an evidentiary hearing on the issue of whether Pinkston was prevented from attending the May 23 evidentiary hearing was held on July 24, 2020. *See* Doc. #266.

## II
## Standard

Under 28 U.S.C § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report … to which objection is made." "[W]here there is no objection, the Court need only determine whether the report and recommendation is clearly erroneous or contrary

to law." *United States v. Alaniz*, 278 F. Supp. 3d 944, 948 (S.D. Tex. 2017) (citing *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989)). Additionally, "although the district judge *must* make an independent determination of a magistrate judge's order upon objection, he is not *precluded* from reviewing a magistrate judge's order to which a party did not object." *Schur v. L.A. Weight Loss Ctrs., Inc*, 577 F.3d 752, 760–61 (7th Cir. 2009) (collecting cases).

## III
## Hearing Testimony

Seven witnesses testified during the evidentiary hearing: (1) Pinkston; (2) Joseph Ryan Streeval; (3) Jeanette Grayson; (4) Undraneesha Selvage; (5) Richard Pickett; (6) Elsie Bynum; and (7) Scott Middlebrooks. Doc. #267. The testimony was conflicting.

### A. Pinkston's Testimony

Pinkston testified that the day before his hearing, he spoke with "Deputy Walker," the Deputy Warden of Operations, who told Pinkston that he could get a haircut before his hearing and that Walker would leave a note for the captain on duty. Walker told him to inform the officers tasked with bringing him to the hearing to speak with the captain. The following morning, Pinkston was awakened by Pickett and Bynum. Pinkston asked the officers to check with the on-duty captain regarding the haircut. The officers left and Pinkston began preparing for the hearing.

The officers returned "pretty fast" with Grayson. One of the officers told Pinkston that he needed to get ready for his hearing. Pinkston repeated that the Warden had said he could get a haircut and asked the officers to check with the on-duty captain. Grayson told Pinkston that he would not be able to get a haircut because the prison was on lockdown and that if she went to inquire to the captain, "they are going to say that you refused." Pinkston responded that he was not refusing to go but that he wanted them to check with the captain regarding the haircut. Eventually, the officers left while Pinkston continued to prepare for the hearing.

4

Pinkston completed his preparations at approximately 4:55 a.m. The transportation officers did not return. When other officers came to the cells with breakfast trays at approximately 5:30 a.m., Pinkston asked where the transportation officers were. The officers serving breakfast informed Pinkston that the transportation officers reported that Pinkston had refused to leave. Pinkston asked the officers to inform the transportation officers that he was willing to attend the hearing. The officers said they would "let them know." At approximately 6:15 a.m., the breakfast officers returned and informed Pinkston that the transportation officers said they could not take Pinkston because it was "too late."

### B. Prison Staff Testimony

At the time of his evidentiary hearing, Pinkston was housed in long-term segregation, a long-term housing unit for inmates with "disciplinary problems." Transportation for inmates in this unit requires extra time because guards are required to "clear all the area and take all precautions," and to use extra restraints on the inmate to be transported. Transportation also requires two vehicles, a transportation vehicle and a "chaser," for safety.

Grayson arrived at the facility at approximately 4:00 a.m. and was informed by the commanding officer of the housing unit that Pinkston was refusing to attend the hearing. She testified that she went to Pinkston's cell at 4:15 a.m. and spoke with him for about five minutes. During this conversation, Pinkston stated that he would not go unless he received a haircut. After this conversation, Grayson informed Walker, the duty captain, and a "Major Ferguson" that Pinkston had refused the transport. The supervisors stated that if Pinkston refused to go, he did not have to be transported. She then assisted with the distribution of breakfast and left the facility at approximately 8:00 a.m. for an appointment.

Later that day, Walker told Grayson that Grayson had a call from Judge Sanders regarding

Pinkston's absence from the hearing. During the call with Judge Sanders, Grayson testified that Pinkston had refused to attend the hearing.

Selvage, who was also on Pinkston's transportation team, offered similar testimony. Selvage testified that she arrived at the facility at approximately 4:00 a.m., obtained restraints for the transport, and went to Pinkston's cell. When Selvage arrived at Pinkston's cell, Pinkston was standing near his door. Pinkston informed the guards that he would not attend his hearing without a haircut and that he had been promised a haircut by Walker. According to Selvage, Pinkston never asked the guards to check with Walker, he "just kept saying that Warden Walker promised … a haircut." Later that morning Selvage and Pickett were assigned to a medical transport.

Pickett, another member of the transportation team, testified that Pinkston stated he would not go to the hearing without a haircut. Pickett was assigned to a medical transport at approximately 10:00 a.m. However, Pickett testified that around breakfast time, a sergeant informed staff that "Pinkston is ready to go around."

Bynum testified that she arrived at the facility at approximately 4:00 a.m. and went to Pinkston's cell. According to Bynum, Pinkston said that he was not going to go because he did not receive a haircut. Bynum testified that Pinkston stated Walker had promised him a haircut but that she did not recall whether Pinkston asked her to speak with the on-duty captain. After Pinkston refused to attend the hearing, Bynum attended a class.

### C. Streeval Testimony

Streeval, an inmate at Wilkinson County Correctional Facility, testified that he had no memory of the May 23 events but that Pinkston offered him "incentives" to testify falsely that the staff at the facility "withheld him from coming to court" and that Pinkston is "trying to … scam the State out of some money." Streeval, upon cross examination by Pinkston, also testified that

6

while he is in long-term segregation, he testified in clothing not issued to segregation prisoners. This clothing change occurred sometime in the three weeks prior to the evidentiary hearing. Finally, Streeval testified that he is afraid of Pinkston and that he did not "know who to trust."

## IV
## Report and Recommendation

As explained above, Pinkston objects to the R&R on the grounds that he was prevented from attending the hearing and that Judge Sanders' refusal to allow him to present his case was error. Pinkston cites no authority for this position.

"There is a constitutional right to a fair trial in a civil case." *Latiolais v. Whitley*, 93 F.3d 205, 207 (5th Cir. 1996). "At a minimum, fundamental fairness requires that plaintiffs have the opportunity to present their cases so that the trier of fact can make a meaningful search for the truth." *Id*. Under the fundamental fairness standard, a prisoner has no absolute constitutional right "to be present, or to testify, at his own civil trial." *Id*. at 208. Nevertheless, a "district court may not summarily exclude a prisoner-plaintiff from the trial of his civil rights suit." *Id*. The right to attend a trial is dependent on factors such as "whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, and whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted." *Id*. Even when a plaintiff has a right to attend a trial, this right is waivable. *Bacon v. United States*, 355 F. App'x 569, 571 (2d Cir. 2009).

Here, there is no dispute that Pinkston, who is proceeding pro se, had a right to attend his evidentiary hearing which was, in effect, a trial on his claims. Judge Sanders seemed to conclude as much when he issued a writ of habeas corpus ad testificandum for Pinkston. *See* Doc. #203. Given this, it would have been error to proceed with the evidentiary hearing in Pinkston's absence

unless Pinkston waived his right to be present.

This Court has not found a case establishing an evidentiary standard for waiver of the right to be present at a hearing. Courts have, however, held that "[c]onstitutional rights may be waived upon *clear and convincing evidence* that the waiver is knowing, voluntary, and intelligent." *Dodson v. Bd. of Educ. of the Valley Stream Union Free Sch. Dist.*, 44 F. Supp. 3d 240, 245 (E.D.N.Y. 2014) (collecting cases); *see also McCullough v. Bd of Trs. of N. Panola Consol. Sch. Dist.*, 424 F. Supp. 616, 619 (N.D. Miss. 1976) (applying clear and convincing standard to waiver of due process protections). Because Pinkston is proceeding pro se, his presence at the evidentiary hearing was undoubtedly necessary to present his case so as to implicate the constitutional right of fundamental fairness. It follows that a waiver of his right to attend the hearing may only be found based upon clear and convincing evidence of a knowing, voluntary, and intelligent waiver.

Here, the evidence regarding the circumstances of Pinkston's absence from the evidentiary hearing is conflicting. The prison staff testified that Pinkston absolutely refused to attend the hearing without a haircut. Pinkston testified that he made no such refusal and that he simply asked the guards to check with the captain on duty regarding an alleged promise of a haircut. Given this conflicting credible testimony, as well as the fact that Pinkston has actively pursued this litigation for approximately three years, the Court cannot conclude that clear and convincing evidence exists to find that Pinkston waived his constitutional right to present his case. *See Folsom v. Franklin*, 234 F. App'x 856, 862 (10th Cir. 2007) ("conflicting and credible evidence" precluded finding supported by clear and convincing evidence). Because no such waiver occurred, disposing of Pinkston's claims based on the evidentiary hearing at which Pinkston was absent would be error. Accordingly, the R&R must be rejected.

## V
## Motion for Contempt

"[I]t is firmly established that the power to punish for contempts is inherent in all courts." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (internal quotation marks omitted). To justify a finding of civil contempt, a "movant must establish by clear and convincing evidence that (1) a court order was in effect, (2) the order required specified conduct by the respondent, and (3) the respondent failed to comply with the court's order." *United States v. City of Jackson*, 359 F.3d 727, 731 (5th Cir. 2004). "Once the movant has shown a prima facie case, the burden falls on the violating party to 'show either mitigating circumstances that might cause the district court to withhold the exercise of its contempt power, or substantial compliance with the … order.'" *Little Tchefuncte River Ass'n v. Artesian Util. Co.*, 155 F. Supp. 3d 637, 657 (E.D. La. 2015) (quoting *Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987)).

While the Court has concluded that a refusal by Pinkston to attend the hearing is not supported by clear and convincing evidence, for the same reasons, it also cannot conclude that Pinkston has shouldered his burden of establishing by clear and convincing evidence that he was prevented from attending. Accordingly, a finding of contempt is inappropriate. The motion for contempt, therefore, will be denied.

## VI
## Conclusion

For the reasons explained above, Pinkston's motion for contempt [221] is **DENIED** and his objections to the R&R [230] are **SUSTAINED**. The R&R [222] is **REJECTED**. A new evidentiary hearing on Pinkston's claims will be noticed separately.

**SO ORDERED**, this 27th day of August, 2020.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**